# Joseph Taylor *against* Jacob Meekly.

A bond on *non est factum*, must generally be proved by the subscribing witnesses; but if they cannot be had, or are unable to prove the execution, collateral testimony is admissible.

A JUDGMENT was entered up against Daniel Meekly and Jacob Meekly, on a single bill, dated 14th March 1801, for 414*l.* 15*s.* 9*d.*, payable on the 1st September then next, in pursuance of a warrant to confess judgment.

The judgment, so far as it respected Daniel, remained in force, but was opened as it related to Jacob, who was the father of Daniel, on his affidavit, that he had not executed the instrument.   The cause now came on to trial on the plea of *non est factum.*

*The paper produced purported to be a joint bill, with several obliterations and additions to it, in a different ink. [*80 Thus, " I promise," would read " we promise ; " " I bind me," would read " we bind us ; " and " my hand and seal," would read " our hands and seals."

The hand writing of two witnesses, " George Armstrong and " William Freet," were subscribed to the bill, and the mark of Sally Meekly was added in a different ink.

She was the daughter of the defendant Jacob Meekly, and was since intermarried with one Plummer.

Upon being sworn, she deposed, that she had put her mark to the paper about three years ago, at the instance of her brother Daniel, and the plaintiff, Taylor, at her father's house near the town of Northampton.   That her father was not then in the room, nor did she see him write his name, or seal and deliver the paper, or acknowledge the same as his deed.   She was then 14½ years old, and that evening she told her father of her having put her mark to a paper, but he made no further inquiry. That her brother Daniel, and the plaintiff, were together at her father's for two or three days, but she knew nothing of their business, or what they were doing in the room when the paper was signed, where they continued for half an hour.   That her

[Taylor *v.* Meekly.]

brother Daniel had followed the business of keeping store at Greensburgh, in Westmoreland county, (distant above 250 miles from her father's house) and the plaintiff was a stranger to her before. That she knew no such person as George Armstrong or William Freet; nor when she put her mark to the paper were any such persons present. On her cross examination, she declared she did not know what paper she had put her mark to, and that it was not read to her.

It was admitted that George Armstrong and William Freet, had for several years past lived in Greensburgh, but they had not been subpœnaed, or appeared.

The plaintiff's counsel then offered to shew by collateral testimony the admissions of the defendant to several witnesses, and also by two of his letters; that he had executed the bill as security for his son Daniel, who had sealed and delivered it before in Greensburgh; that he was desirous of keeping it a secret to keep peace with his other children; that he received from the plaintiff at the time of such his execution, a deed for certain lands which he had made over to his son, and which had been delivered to the plaintiff by way of security for goods sold to him; and that he greatly feared he would be sent to a prison, unless his son would raise the money to pay off the bill by a sale of his store goods.

*81]   *The defendant's counsel excepted to this testimony, as a violation of a strong technical rule of evidence. The subscribing witnesses are alone competent to prove the execution of a written instrument, because they may know and be able to explain facts which passed at the time of execution. *Vid.* 2 Bos. and Pul. 85. 1 Dall. 209. 4 Burr. 2275. The rule cannot be dispensed with, unless it appear that the attendance of the subscribing witnesses cannot be procured. Dougl. 205 (216.) Abbot *v.* Plumbe. Where the witnesses cannot be got, it will suffice to prove their hand writing and that of the obligor. Ib. 89 (93.) Coghlan *v.* Williamson. On the face of the instrument it would appear, that the three subscribing witnesses were present at the execution of it, and therefore they should have been procured, or their absence accounted for. It is admitted that Armstrong and Fleet are in full life at Greensburgh; and if their personal attendance could not have been procured, their depositions might have been taken under a rule of court. No efforts having been made to procure their testimony, induces a presumption unfavourable to the plaintiff.

The plaintiff's counsel answered, that it would be to little purpose to have examined the two witnesses to a transaction of which they knew nothing. The bill was executed by the son in Westmoreland county, in March 1801, where Armstrong and Freet lived, but by the father in Northampton county, in June following, where his daughter resided with him. It is true, the attestation is drawn in an inaccurate manner, as if the three wit-

[Taylor *v.* Meekly.]

nesses were present when the bill was sealed and delivered by both of the obligors. But the circumstances disprove the fact, thus collected from the appearance of the note ; and the daugh ter swears, that no such persons as Armstrong and Freet were at her father's house when she witnessed the paper. She certainly attested something, but what it was she does not now recollect. She was young at the time, and must be supposed to lie under a strong bias to her father.

We are therefore at liberty to call other witnesses to prove the execution, as she denies it. 4 Burr. 2225. Peake's Evid. 64. Sarah Plummer, not having seen the deed executed, it is the same as if there was no witness at all ; and in that case, the hand writ ing may be proved by another witness ; from which a presump tion arises that it was sealed and delivered. Peake's Rep. 147. Grellier *v.* Neale, *et al.* Per Lord KENYON. The case of Lowe *v.* Jolliffe, in 1 Bla. Rep. 365, is extremely strong. There three subscribing witnesses to the testator's will, and the two surviv ing witnesses to a codicil, and a dozen servants of the testator all swore, that he was utterly incapable of making a will ; but evi dence *of several of the nobility and principal gentry of the county of Worcester, was received in support of his sanity, [*82 and the will of the testator was fully and satisfactorily established. By Cowp. 204, it appears, that circumstances may amount to the delivery of a bond.

BY THE COURT. The obliterations and additions apparent on the bill in a different ink, strongly fortify the opinion, that it was executed at different times by the son, and the person whoever he was, that added the signature of the father. There would be great weight in the defendant's objection, if Sarah Plummer had not proved, that Armstrong and Freet were not present, when the second execution is supposed to have happened. Circum stanced as this case is, the subscribing witness being unable *to prove the execution of the single bill by the defendant, and there not being the slightest probability, that Armstrong or Freet could throw any light on the transaction, we are of opinion that collateral evidence may well be received.

The evidence was accordingly admitted ; and a mass of testi mony, both written and parol, was produced, which established the instrument produced, to be the deed of the defendant, beyond. all doubt.

The jury readily found a verdict for the plaintiff.

Mr. Hopkinson, *pro quer.*
Messrs. M. Biddle and J. Ross, *pro def.*

Cited in S. & R. 311 to show that if the subscribing witness denies the attesta tion, or is unable or unwilling to prove the execution of the deed, collateral circum stantial evidence, proof of handwriting, acknowledgment, are admissible.

* *Vide* Ley *v.* Ballard, Guild. 1790. Espin. Dig. 258, (2d edit.) The law on this sub ject, seems to be accurately laid down by Lord Chief Justice KENYON, in Barnes *v* Trompowsky, 7 Term Rep. 266. See also Cunliffe, *et al. v.* Septon, *et al.* 2 East, 183.